**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SYNEEDA L. PENLAND, | : | |
| | : | |
| Petitioner, | : | Civil Action No.:   09-1417 (RMU) |
| | : | |
| v. | : | Re Document No.:  2 |
| | : | |
| RAYMOND E. MABUS, | : | |
| Secretary of the Navy, | : | |
| | : | |
| Respondent. | : | |
| | : | |
| SYNEEDA L. PENLAND, | : | |
| | : | |
| Petitioner, | : | Civil Action No.:   09-1418 (RMU) |
| | : | |
| v. | : | Re Document No.:  3 |
| | : | |
| RAYMOND E. MABUS, | : | |
| Secretary of the Navy, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**MEMORANDUM OPINION**

**DENYING THE PETITIONER'S MOTIONS FOR A PRELIMINARY INJUNCTION**

**I.  INTRODUCTION**

This matter is before the court on the petitioner's motions for a preliminary injunction. The petitioner, a former Lieutenant Commander in the U.S. Navy, commenced these consolidated actions protesting her discharge from the Navy following a general court-martial. The petitioner seeks a preliminary injunction requiring the Navy to restore her to active duty status pending the outcome of the litigation on the merits.  Because the petitioner has demonstrated neither a likelihood of success on the merits nor irreparable harm absent interim injunctive relief, the court denies the petitioner's motions.

## II.  FACTUAL & PROCEDURAL BACKGROUND

In May 2008, the petitioner was convicted in a general court-martial of four violations of the Uniform Code of Military Justice ("UCMJ"): failure to obey a lawful order, making a false official statement, conduct unbecoming an officer and adultery.  Petr's Mot. at 2; Resp.'s Opp'n at 1.[1]  Specifically, the petitioner was convicted of having a sexual relationship with a married subordinate officer, of harassing the subordinate officer's spouse (an active duty enlisted sailor) and of lying about her conduct.  Petr's Mot. at 2; Resp.'s Opp'n at 1.  The petitioner maintains that the prosecution constituted reprisal for complaints that she made against her superior officer regarding financial improprieties within her command.  Petr's Mot. at 2.  As a result of her conviction, the petitioner was sentenced to serve sixty days in confinement and was fined $9,000.  Petr's Habeas Pet. at 2; Resp.'s Opp'n at 2.  The petitioner ultimately served forty-five days in confinement and was released.  Petr's Habeas Pet. at 2.

The petitioner appealed her conviction to the General Courts-Martial Convening Authority ("GMCA"), citing numerous alleged errors that marred the court-martial proceedings, including unlawful command influence, ineffective assistance of counsel and various procedural and evidentiary errors.  *Id.*; Resp.'s Opp'n at 3.  The GMCA declined to reverse the petitioner's conviction.  Petr's Habeas Pet. at 2; Resp.'s Opp'n at 4.  The matter was then referred to the Office of the Judge Advocate General of the Navy ("JAG"), which investigated the petitioner's allegations and upheld the conviction in February 2009.  Petr's Habeas Pet. at 2-3; Resp.'s Opp'n at 4.

---

[1] Citations to the "Petr's Mot." refer to the motion for a preliminary injunction filed by the petitioner in Civil Action No. 09-1417.  The petitioner also filed a separate motion for a preliminary injunction in Civil Action No. 09-1418.  The latter motion, which is identical to the former in all respects other than its discussion of likelihood of success on the merits, is referred to herein as "Petr's 1418 Mot."  Citations to "Resp.'s Opp'n" refer to the respondent's joint opposition to the petitioner's motions for a preliminary injunction.

Following the court-martial conviction, the Navy ordered the petitioner to show cause before a three-member board of inquiry ("BOI") why she should not be separated from the Navy because of her conviction and allegedly substandard performance. Petr's Mot. at 2; Resp.'s Opp'n at 2. The BOI concluded that the petitioner should be separated from the Navy. Petr's Mot. at 2; Resp.'s Opp'n at 2. On June 29, 2009, the Assistant Secretary of the Navy for Manpower and Reserve Affairs signed the petitioner's discharge order, Resp.'s Opp'n at 2, and the petitioner's separation from the Navy was scheduled to take effect on July 31, 2009, Petr's Mot. at 1.

On July 29, 2009, the petitioner commenced these actions. In Civil Action No. 09-1417, the petitioner has filed a petition for a writ of mandamus, alleging that the petitioner's separation violated Navy regulations governing the discharge of servicemen requiring medical attention.[2] *See generally* Petr's Mandamus Pet. The petitioner requests that the court "enter a Writ of Mandamus ordering Secretary of the Navy Raymond E. Mabus, Jr. to overturn his earlier decision . . . that petitioner be separated from active duty . . . on July 31, 2009." *Id.* at 9.

In Civil Action No. 09-1418, the petitioner has filed a petition for a writ of habeas corpus, citing various procedural and substantive errors that occurred during her court martial proceedings.[3] *See generally* Petr's Habeas Pet. The petitioner "moves this Court to grant her petition for Habeas Corpus relief by dismissing all four of her criminal convictions, overturning the verdict of the administrative separation board, and ordering [Secretary Mabus] to retain [her] on active duty." *Id.* at 29.

---

[2]  As discussed below, the petitioner suffers from thrombocytosis, a condition characterized by a high platelet count. Petr's Mot. at 3-4.

[3]  The two actions have since been consolidated. *See* Minute Order (July 31, 2009).

On the same day she filed these petitions, the petitioner filed motions in both actions for a preliminary injunction and temporary restraining order. *See generally* Petr's Mot.; Petr's 1418 Mot. The court set an expedited briefing schedule and, on July 30, 2009, denied the petitioner's requests for a temporary restraining order. *See* Minute Order (July 30, 2009). The court now turns to the petitioner's motions for preliminary injunctive relief.

## III.  ANALYSIS

### A.  Legal Standard for a Preliminary Injunction

This court may issue interim injunctive relief only when the movant demonstrates "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Resp. Council, Inc.*, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008)). It is particularly important for the movant to demonstrate a likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The other critical factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). Indeed, if a party fails to make a sufficient showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*,

58 F.3d 738, 747 (D.C. Cir. 1986). Provided the petitioner demonstrates a likelihood of success on the merits and irreparable injury, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987). Finally, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As an extraordinary remedy, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id*. Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### B. The Court Denies the Petitioner's Motion for a Preliminary Injunction

#### 1. The Petitioner Has Failed to Demonstrate a Likelihood of Success on the Merits

The petitioner asserts that she is likely to succeed on her petition for a writ of mandamus because the Navy "failed to adhere to its own very explicit regulations about how it deals with seriously ill patients awaiting discharge for other than medical reasons." Petr's Mot. at 4-5. The petitioner notes that at the time of her discharge, Navy doctors were treating her for thrombocytosis, a blood condition characterized by a high platelet count. *Id*. at 3-4. Her physician recommended that a physical examination board ("PEB") be convened to determine whether the petitioner could be separated from the Navy without adverse health consequences.

*Id*. at 3-5. The petitioner alleges that in contravention of its own regulations, the Navy ordered her physician to halt those proceedings once local and national media began to report on her upcoming discharge. *Id*. at 3-4.

The petitioner also asserts that she is likely to succeed on the merits of her petition for a writ of habeas corpus "because the court-martial that led to her convictions was rife with egregious violations of her constitutional rights and plagued by prosecutorial misconduct, and ineffective assistance from her defense counsel." Petr's 1418 Mot. at 4. The petitioner has identified more than a dozen alleged errors that marred the court-martial proceedings, including the improper admission of un-authenticated photographs, the exclusion of testimony from the petitioner's civilian boyfriend, the failure of her counsel to seek dismissal under the Military Whistleblowers Act and the improper participation of her superior officer in the proceedings. *Id*. at 4-5; *see generally* Petr's Habeas Pet.

The respondent maintains that the petitioner has no likelihood of success on the merits in either action. Resp.'s Opp'n at 16-19. With respect to the petition for a writ of mandamus, the respondent asserts that the regulations at issue expressly permit discharge of a serviceman receiving medical attention without a PEB if the discharge is based on misconduct, as the petitioner's discharge was. *Id*. at 19. Furthermore, the respondent asserts that the petitioner cannot succeed on her petition for a writ of habeas corpus because she is not currently in custody and because a habeas petition is not a proper vehicle for obtaining appellate review of a court-martial proceeding. *Id*. at 18-19. Lastly, the respondent contends that the petitioner failed to exhaust her administrative remedies prior to commencing suit. *Id*. at 16.

The court turns first to the petitioner's mandamus petition. Secretary of the Navy Instruction ("SECNAVINST") 1850.4E provides as follows:

      a.   The disability statutes do not preclude disciplinary separation.  Such separations as described herein normally supersede disability separation or retirement.  Whenever a member is being processed through the PEB and, subsequently the member is processed for an administrative involuntary separation for misconduct, disciplinary proceedings which could result in punitive discharge, or an unsuspended punitive discharge is pending . . . disability evaluation shall be suspended and monitored by the PEB.

      b.   Do not submit a case to the PEB for a member who is currently being processed for misconduct which could result in a punitive discharge as the result of a captain's mast or courts-martial or for a member who is pending an administrative discharge due to misconduct.

SECNAVINST 1850.4E ¶ 3403.  These regulations make clear that administrative separation proceedings based on "misconduct" supersede disability proceedings by a PEB.  *See id.*

The petitioner's administrative separation resulted from her conviction at a general court-martial of four violations of the UCMJ.  *See* Administrative R. ("AR") at 2-4.  The BOI recommended the petitioner for discharge based on its unanimous and express determination that the petitioner "*committed misconduct* based on violation[s] of UCMJ Article 92 (failure to obey order or regulation), 107 (false official statement), 133 (conduct unbecoming an officer and gentleman), and 134 (adultery)."  AR at 45 (BOI Findings Worksheet in the Case of LCDR Syneeda L. Penland) (emphasis added).  Furthermore, the Navy regulation governing administrative separation proceedings includes, under the section titled "Misconduct, or Moral, or Professional Dereliction," the offense of "[i]ntentional misrepresentation or omission of material fact in official written documents or official oral statements," one of the crimes for which the petitioner was convicted.  SECNAVINST 1920.6C ¶ 12.  Indeed, the petitioner states that the narrative separation code "GNC" was listed on her discharge order, signifying discharge

based on "acts of unacceptable conduct – i.e., moral and/or professional dereliction."[4]  Petr's Opp'n at 7.  Thus, the evidence presented to the court strongly suggests that the petitioner's administrative discharge was based on "misconduct."

In light of this evidence, it appears that the petitioner was not entitled to a physical evaluation board under applicable Navy regulations.  *See* SECNAVINST 1850.4E ¶ 3403.  Accordingly, the petitioner's mandamus petition, premised on the assertion that the Navy failed to follow its regulations regarding the discharge of ill servicemen, is unlikely to succeed.

The petitioner is equally unlikely to prevail on her petition for a writ of habeas corpus.  Courts may entertain petitions for habeas relief only from persons "*in custody* in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2241(c)(3) (emphasis added); *Maleng v. Cook*, 490 U.S. 488, 545-46 (1995).  Although a serviceman may use a habeas petition to collaterally attack a court-martial conviction, habeas relief is not available once the serviceman is no longer imprisoned and has been discharged from service.  *See United States v. Augenblick*, 393 U.S. 348, 349-50 (1969) (holding that habeas corpus was not available to a naval officer who was dismissed from service and not imprisoned); *see also Miller v. United States*, 324 F.2d 730, 731 (10th Cir. 1963) (holding that a serviceman discharged from the Army following a conviction at a general court-martial could not maintain a habeas petition challenging his dismissal because he was not in custody at the time).

---

[4] The petitioner gives weight to the fact that whereas other narrative separation codes expressly use the term "misconduct," the code "GNC" refers only to "unacceptable conduct."  Petr's Mot. at 6-7.  Aside from the fact that the petitioner has not submitted to the court the order purportedly containing the petitioner's narrative separation code, the petitioner has offered no authority suggesting any meaningful distinction between "misconduct" and "unacceptable conduct" for purposes of administrative separation proceedings.  *See generally* Petr's Mot.; Petr's Reply.  Furthermore, the petitioner fails to articulate why a narrative separation code should be afforded greater weight than the Navy regulations listing offenses constituting "misconduct" and the express determinations of the BOI.  *See generally* Petr's Mot.; Petr's Reply.

The petitioner states that she was released after serving forty-five days in confinement and that her discharge became effective on July 31, 2009. Petr's Habeas Pet at 2. Accordingly, the petitioner may not maintain a habeas petition to challenge the errors that occurred during the court-martial proceedings and is unlikely to succeed on the merits of her claim. *See Augenblick*, 393 U.S. at 349-50.

Furthermore, even if the petitioner were "in custody," it would appear that this court lacks jurisdiction to hear the petitioner's habeas petition, because she would be "in custody" in San Diego, California, where she was stationed, not in Washington, D.C. *See Rooney v. Sec'y of the Army*, 405 F.3d 1029, 1032 (D.C. Cir. 2005) (holding that the district court lacked jurisdiction to hear the petitioner's habeas petition because the petitioner's immediate supervising officer was located in Texas, where the petitioner was stationed, and the fact that the Secretary of the Army was located in Washington, D.C. was of no moment); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (observing that habeas corpus jurisdiction resides only in the district court where the prisoner is incarcerated).

Thus, the petitioner has failed to demonstrate that she is likely to succeed on the merits of her mandamus petition or her habeas petition. This failure strongly militates against the entry of injunctive relief. *See Am. Bankers Ass'n*, 38 F. Supp. 2d at 140. Although the court could deny the preliminary injunction based solely on the fact that the petitioner is not likely to succeed on the merits, *see id.*, the petitioner has also failed to demonstrate irreparable injury, as discussed below.

### C. The Petitioner Has Not Shown That She Will Suffer Irreparable Harm Absent Injunctive Relief

The petitioner asserts that unless this court enters a preliminary injunction restoring her to active duty status, she will be irreparably harmed because she will no longer have access to

9

health insurance benefits, which she requires for treatment of her medical condition. Petr's Mot. at 3-4. The petitioner asserts that she "does not have the financial resources to purchase health insurance on the open market because of the exorbitant rates she would be charged due to her preexisting condition." *Id.* at 4. Thus, the petitioner "will be forced to transition into the Veterans Affairs health system, and absent hospitalization, will struggle to find the intensive and continuing outpatient care she will need in the overburdened San Diego area Veterans Affairs medical system, or in another part of the country if she is forced to relocate." *Id.*

The respondent maintains that the petitioner has failed to demonstrate that she will suffer irreparable harm absent a preliminary injunction. Resp.'s Opp'n at 11-16. The respondent asserts that the petitioner's loss of medical coverage is ultimately a quantifiable economic benefit. *Id.* at 15. In addition, the respondent asserts that the Department of Veterans Affairs ("VA") may provide both medical care and disability benefits for her service-connected medical conditions. *Id.* at 16.

The court notes at the outset that numerous other courts have held that a military employee seeking to prevent his or her discharge through a preliminary injunction faces a heightened standard of establishing irreparable injury. *See Guerra v. Scruggs*, 942 F.2d 270, 273-74 (4th Cir. 1991) (vacating a preliminary injunction granted by the trial court because "[a] higher requirement of irreparable injury should be applied in the military context given the federal courts' traditional reluctance to interfere with military matters") (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *accord Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985) (holding that *Sampson*'s heightened standard for irreparable injury applies to military personnel); *Chilcott v. Orr*, 747 F.2d 29, 33 (1st Cir. 1984); *Bors v. Allen*, 607 F. Supp. 2d 204, 210-11 (D.D.C. 2009). As the Supreme Court noted in *Sampson*, "[t]he possibility that adequate

compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable injury." *Sampson*, 415 U.S. at 90 (stating that "[t]he key word in this consideration is irreparable" and noting that claims of loss of income or reputation fall "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction"); *see also Farris v. Rice*, 453 F. Supp. 2d 76, 80 (D.D.C. 2006) (holding that the loss of job and salary, without more, was insufficient to establish irreparable injury).

The *Sampson* Court did recognize, however, that "cases may arise in which the circumstances surrounding an employee's discharge together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." 415 U.S. at 92 n.68. Indeed, the loss of medical benefits may, under certain circumstances, give rise to irreparable harm. *Compare Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 584 (8th Cir. 2006) (affirming a preliminary injunction entered in a case in which the district court held that the retirees would suffer irreparable harm from the loss of their medical benefits because their limited and fixed incomes would result in their inability to meet their medical expenses) *and Risteen v. Youth for Understanding, Inc.*, 245 F. Supp. 2d 1, 16 (D.D.C. 2002) (finding irreparable injury when the plaintiff demonstrated that he would not have access to "critical medical attention because he ha[d] lost his health insurance") *with Carabillo v. ULLICO Inc. Pension Plan & Trust*, 355 F. Supp. 2d 49, 54 (D.D.C. 2004) (observing that courts in this Circuit have not found irreparable injury in cases in which the plaintiff has alleged only a mere financial hardship resulting from the loss of health benefits rather than the denial of access to critically needed health care) *and Adair v. England*, 417 F. Supp. 2d 1, 9 (D.D.C. 2006) (holding that the plaintiff's loss of benefits following his discharge from the Navy did not constitute

irreparable injury because he established nothing more than that he would suffer financial strain resulting from his loss of benefits) *and Lin v. Great Rose Fashion, Inc.*, 2009 WL 1544749, at *20 (E.D.N.Y. June 30, 2009) (holding that irreparable injury resulting from job loss "can only be established by a clear demonstration that the plaintiff (1) has little chance of securing future employment; (2) has no personal or family resources; (3) has no private unemployment insurance; (4) is unable to finance a loan privately; (5) is ineligible for public assistance; and (6) there are . . . other compelling circumstances weighing heavily in favor of interim relief").

In the instant case, the petitioner has not demonstrated that she would be denied access to critical medical care without injunctive relief.  *See Risteen*, 245 F. Supp. 2d at 16.  To the contrary, the petitioner acknowledges that she will have access to the VA health system following her discharge.  Petr's Mot. at 4; Resp.'s Opp'n at 4-5, 16.  The petitioner does not contend that she will not receive the care she needs from the VA.  *See* Petr's Mot. at 4.  Furthermore, beyond the petitioner's speculation that she will be unable to obtain any employment because of her military discharge, the petitioner has failed to demonstrate that she is unable to purchase medical insurance.[5]  *See generally* Petr's Mot; Petr's Reply.  Accordingly, the court concludes that the petitioner has failed to demonstrate that she will suffer irreparable harm without the entry of interim injunctive relief.

---

[5] The petitioner does not dispute the respondent's assertion that she will be entitled to purchase medical insurance through the Consolidated Health Care Benefit Program, a program of temporary medical insurance available to qualified individuals who lose their military health benefits.  Resp.'s Opp'n at 5; *see generally* Petr's Reply.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the petitioner's motions for a preliminary injunction.  An Order consistent with this Memorandum Opinion is issued this 7th day of August, 2009.

                                                                                RICARDO M. URBINA
                                                                                United States District Judge